## James S. McFarlane *v.* Richard Richardson.

Appeal from the Parish Court of New Orleans, *Maurian*, J.

Morphy, J. The petitioner having paid $1,114, on a judgment obtained by S. G. Blanchard against James Vance, as principal, and against himself as security, was subrogated by the judgment creditor to all his rights against Vance under the judgment. He now brings the present hypothecary action, alleging that, on the 8th of June, 1838, James Vance sold to Mary Conollin, a negro woman named Estelle, or Biddy, and her two children, which slaves he had purchased of John D. Bein, on the 18th of May. 1836; that these slaves were seized in the hands of Mary Conollin, and sold by the sheriff of the Commercial Court to satisfy a judgment against her in favor of Richard Richardson and others, assignees of S. T. Hobson & Co., and were bought of Richard Richardson for $1,300; that the said slave Estelle, or Biddy, and her four children are in the possession of the defendant, and are subject to his judicial mortgage for $1,114. The answer, after a general denial, avers that the defendant is the owner and possessor of a certain mulatress named *Biddy*, or *Kitty*, about thirty-seven years of age, with her two children, *Thomas*, a mulatto boy five years old, and *Joe*, a mulatto aged three years, but that he is not the owner or possessor of any such slaves as are described in the plaintiff's petition; that the slaves in his possession were bought by defendant, at a sheriff's sale made in the suit of *The Assignees of Hobson & Co.* v. *Mary Conollin;* that they had been purchased on the 17th of December, 1833, from the succession of Pierre Romain, by John D. Bein, acting for and in behalf of Mary Conollin; that the defendant prior to purchasing said slaves was informed, that although bought in the name of J. D. Bein, they

were really purchased and paid for by said Mary Conollin, whose property they continued to be up to the time they were seized in said suit; that said slaves never did belong to James Vance, and never were subject to plaintiff's judicial mortgage, which is not admitted, but on the contrary, is specially denied. The answer further avers that, even if an apparent title to the slaves in the defendant's possession ever existed in said James Vance, no real title was ever vested in him, he being the owner, if at all, merely as agent for said Mary Conollin; that this fact was well known to the plaintiff, who never pretended to any right or claim to said slaves under his judicial mortgage, till defendant was obliged to have them sold in order to enforce the payment of a just debt; that thereupon the said Vance, who acts for Mary Conollin, and represents her in all her business, prevailed upon the plaintiff to institute the present action, which is brought not for his (the plaintiff's) advantage, but for the benefit of Mary Conollin and James Vance, who have a common interest, plaintiff having some private agreement or understanding whereby if this suit is successful, its fruits will be received by the said Mary Conollin.   The answer concludes by praying for a judgment, *in solido,* against Vance and Mary Conollin, for the amount of the plaintiff's claim, in case the defendant is condemned to pay it or to deliver up the slaves in his possession.   Vance denied his liability, and pleaded the general issue.   Mary Conollin made no answer.   The court below being of opinion that the plaintiff had not clearly identified the slaves in the defendant's possession, as being those which were owned by Vance, gave judgment for the defendant.   In the sale of the 8th of June, 1838, the slaves sold by James Vance to Mary Conollin, are described as " Estelle, a *negro woman,* aged about twenty-eight years, and her two children, Louisa, aged about eight years, and a male infant aged about nine months; the two former having been purchased of John D. Bein, on the 18th of May, 1836, and the latter being born since said purchase."   In the advertisement of the sheriff's sale of slaves to be made on the 20th of September, 1842, by virtue of a *fieri facias* in the suit of *Richardson & Co.* v. *Mary Conollin,* they are described as, " the mulatress Biddy, about twenty-seven years

old, with her four children, *Louisa*, quarteronne girl, ten years old; Thomas, mulatto boy, five years old ; Joe, ditto, three years ; and Mary, an infant girl, twenty months, &c." From a certificate of the Recorder of Conveyances, it appears that "on the 18th of May, 1836, John D. Bein sold to Vance, Estelle, a negro woman aged about twenty-six years, and her two children, *Louisa*, aged about six years, and Rosina, aged about one year." This certificate does not state from whom J. D. Bein purchased these slaves, a circumstance which would no doubt have appeared from the notarial act of sale, had it been given in evidence. From a sale produced by the defendant, dated the 17th of December, 1833, John D. Bein appears to have purchased from the succession of Pierre Romain " a mulatress, named Biddy, or Kitty, *alias* Estelle, aged twenty-seven years." It is recited in the act that this slave had a child, who was not sold with her, being a *statu-liber*.

By a comparison of these several acts of sale, and by coupling them with the statements and partial admissions of the defendant's answer, the appellant has rendered it very probable, notwithstanding the numerous discrepancies in the names, ages, color, &c., of the slaves mentioned in these acts, that the negro woman Estelle, purchased from J. D. Bein by Vance, and by him sold to Mary Conollin, is the same slave that was purchased by John D. Bein, in 1833, of the estate of Romain, and who was seized at the suit of the defendant in the possession of Mary Conollin, in 1842. This probability is, however, somewhat lessened by a certificate found in the record, in which the Recorder of Conveyances declares that, from the books in his office, John D. Bein does not appear to have alienated the mulatress slave he purchased from the estate of Romain. After the judgment was rendered below, the plaintiff moved for a new trial, and supported it by an affidavit, that he had since discovered testimony to prove that the slaves on whom he seeks to enforce his mortgage, are the same that were conveyed by the estate of Pierre Romain to John D. Bein, by J. D. Bein to Vance, by Vance to Mary Conollin, and by Mary Conollin, by a sheriff's sale, to the present defendant. We think that the judge below erred in giving an absolute judgment in the case against the

plaintiff, and afterwards in overruling his motion for a new trial. He should have been allowed an opportunity of rendering certain the identity of the slaves in question. Justice requires that the case should be remanded for a new trial.

It is, therefore, ordered, that the judgment of the Parish Court be reversed, and that the case be remanded for a new trial, the appellee paying the costs of this appeal.

*Perin* and *Walker*, for the appellant.

*Benjamin*, for the defendant.